**PORTLAND MAIN OFFICE**
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204
(503) 727-1000
*www.usdoj.gov/usao/or*

William M. Narus
William.Narus@usdoj.gov
Quinn P. Harrington
Quinn.Harrington@usdoj.gov
Assistant U.S. Attorneys
(503) 727-1000
*Reply to Portland Office*



**U.S. DEPARTMENT OF JUSTICE**
United States Attorney's Office
District of Oregon
Natalie K. Wight
United States Attorney

**EUGENE BRANCH**
405 E 8th Avenue, Suite 2400
Eugene, Oregon 97401
(541) 465-6771

**MEDFORD BRANCH**
310 West Sixth Street
Medford, Oregon 97501
(541) 776-3564

September 20, 2023

Jamie A. Schafer
David B. Massey
Perkins Coie LLP
700 Thirteenth Street, N.W., Suite 800
Washington, DC 20005-3960
JSchafer@perkinscoie.com

      Re:    *Oregon Tool, Inc.*
                Non-Prosecution Agreement

Dear Counsel:

1.      The United States Attorney's Office for the District of Oregon (the "USAO") and Oregon Tool, Inc. (the "Company"), a corporation organized under the laws of Delaware and headquartered in Oregon, and which at all relevant times was known as Blount, Inc. ("Blount"), pursuant to the authority granted by its Board of Directors, enter into this Non-Prosecution Agreement ("Agreement"). On the understandings specified below, the USAO will not criminally prosecute the Company or any of its parents, subsidiaries or affiliates for any crimes relating to any of the conduct described in the Statement of Facts attached hereto as Attachment A including Aiding and Abetting an Unlicensed Money Transmitting Business, in violation of 18 U.S.C. §§ 1960 and 2. To the extent there is conduct that is not set forth in the attached Statement of Facts or has not otherwise been disclosed by the Company to the USAO, such conduct will not be exempt from prosecution and is not within the scope of or relevant to this Agreement.

2.      The USAO enters into this Agreement based on the individual facts and circumstances presented by this case and the Company, including:

    (a)    the nature and seriousness of the offense conduct that, among other things, involved receiving payments for products sold to two Nigerian distributors from 2014 to 2020 under circumstances in which employees of Blount were aware that the payments were transmitted to Blount through unlicensed money services businesses, and is further described in the Statement of Facts;

    (b)    upon learning of the investigation by the USAO and Federal Bureau of Investigation ("FBI"), the Company conducted an internal investigation and

Jamie A. Schafer and David B. Massey
Re: Oregon Tool, Inc. Non-Prosecution Agreement
Page 2
September 20, 2023

    voluntarily disclosed to the USAO aspects of the conduct that forms the basis for this Agreement;

(c)  the Company received full cooperation credit for its cooperation with the USAO's investigation, including providing non-privileged facts relating to individual involvement in the conduct described in the Statement of Facts attached hereto as Attachment A and conduct disclosed to the USAO prior to the Agreement;

(d)  the Company engaged in extensive remedial measures, including terminating both of the Nigerian distributors, adopting global anti-money laundering controls, including prohibitions on third-party payments, an anti-money laundering policy, a personal device/third party messaging application policy, and enhanced training;

(e)  the Company has committed to continue to enhance its compliance program and internal controls, including ensuring that its compliance program satisfies the minimum elements set forth in Attachment B to this Agreement;

(f)  based on the Company's remediation and the turnover in executive management, the USAO determined that an independent compliance monitor is unnecessary;

(g)  the Company has no prior criminal history; and

(h)  the Company has agreed to continue to cooperate with the USAO in any ongoing investigation of the conduct of the Company and its officers, directors, employees, agents, business partners, and consultants relating to violations of U.S. fraud, money laundering and unlicensed money remittance laws.

3.  Accordingly, after considering (a) through (h) in paragraph 2 above, the USAO has determined that the appropriate resolution of this case is a non-prosecution agreement with the Company and a civil forfeiture payment by the Company in the amount of $1,724,802.75.

4.  The Company admits, accepts, and acknowledges that it is responsible under United States law for the acts of Blount's officers, directors, employees, and agents as set forth in the Statement of Facts attached hereto as Attachment A and incorporated by reference into this Agreement, and that the facts described in Attachment A are true and accurate. The Company expressly agrees that it shall not, through present or future attorneys, officers, directors, employees, agents or any other person authorized to speak for the Company make any public statement, in litigation or otherwise, contradicting the acceptance of responsibility by the Company set forth above or the facts described in the Statement of Facts attached hereto as Attachment A. The Company agrees that if it, its parent company, or any of its direct or indirect subsidiaries or affiliates issues a press release or holds any press conference in connection with this Agreement, the Company shall first consult the USAO to determine (a) whether the text of the release or proposed statements at the

Jamie A. Schafer and David B. Massey
Re: Oregon Tool, Inc. Non-Prosecution Agreement
Page 3
September 20, 2023

press conference are true and accurate with respect to matters between the USAO and the Company; and (b) whether the USAO has any objection to the release.

5.    The Company's obligations under this Agreement shall have a term of one year from the date on which the Agreement is executed (the "Term of the Agreement"), with the exception of its obligations under paragraph 6(e) below, which shall continue until the completion of the civil asset forfeiture case described in paragraph 9 and the distribution of forfeited funds to verified victims as determined by the government.

6.    The Company shall cooperate fully with the USAO in any and all matters relating to the conduct described in this Agreement and Attachment A and other conduct under investigation by the USAO and FBI relating to possible violations of money laundering or money transmission laws at any time during the Term of the Agreement, subject to applicable law and regulations, including data privacy and national security laws, until the later of the date upon which all investigations and prosecutions arising out of such conduct are concluded, or the Term of the Agreement. The Company agrees that its cooperation shall include, but not be limited to, the following:

    (a)    The Company shall timely and truthfully disclose all factual information not protected by a valid claim of attorney-client privilege or work product doctrine with respect to its activities, those of its parent company and affiliates, and those of its present and former directors, officers, employees, agents, and consultants, including any evidence or allegations and internal or external investigations, about which the Company has any knowledge or about which the USAO may inquire. This obligation of truthful disclosure includes, but is not limited to, the obligation of the Company to provide to the USAO, upon request, any document, record or other tangible evidence about which the USAO may inquire of the Company.

    (b)    Upon request of the USAO, the Company shall designate knowledgeable employees, agents or attorneys to provide to the USAO the information and materials described above on behalf of the Company. It is further understood that the Company must at all times provide complete, truthful, and accurate information.

    (c)    The Company shall use its best efforts to make available for interviews or testimony, as requested by the USAO, present or former officers, directors, employees, agents and consultants of the Company. This obligation includes, but is not limited to, sworn testimony before a federal grand jury or in federal trials, as well as interviews with domestic or foreign law enforcement and regulatory authorities. Cooperation shall include identification of witnesses who, to the knowledge of the Company, may have material information regarding the matters under investigation.

Jamie A. Schafer and David B. Massey
Re: Oregon Tool, Inc. Non-Prosecution Agreement
Page 4
September 20, 2023

    (d)    With respect to any information, testimony, documents, records or other tangible evidence provided to the USAO pursuant to this Agreement, the Company consents to any and all disclosures, subject to applicable law and regulations, to other governmental authorities, including United States authorities of such materials as the USAO, in its sole discretion, shall deem appropriate.

    (e)    Upon request of the USAO, the Company shall provide information in its possession in order to verify the information provided in the anticipated victim petitions related to the civil forfeiture action described in paragraph 9 below, including confirming the victims' identities and payment amounts.

7.    In addition, during the Term of the Agreement, should the Company learn of credible evidence or allegations of conduct that is similar to conduct described in this Agreement and Attachment A, the Company shall promptly report such evidence or allegations to the USAO. No later than thirty days after the expiration of the Term of the Agreement, the Company, by the Chief Executive Officer of the Company and the Chief Financial Officer of the Company, will certify to the USAO that the Company has met its disclosure obligations pursuant to this Agreement. Such certification will be deemed a material statement and representation by the Company to the executive branch of the United States for purposes of 18 U.S.C. § 1001.

8.    The Company represents that it is working to implement a compliance and ethics program designed to prevent and detect violations of U.S. fraud, money laundering and unlicensed money remittance laws throughout its operations, including those of its affiliates, agents, and joint ventures, and those of its contractors and subcontractors whose responsibilities include accepting payments from and communicating with distributors, including, but not limited to, the minimum elements set forth in Attachment B.

9.    The Company agrees to forfeit the amount of $1,724,802.75 to the United States Marshals Service via cashier's check or wire transfer no later than forty-five business days after the Agreement is fully executed. The Company acknowledges that this payment represents property, real or personal, involved in transactions in violation of 18 U.S.C. § 1960 as set forth in this Agreement and Statement of Facts. The Company further understands that the government will file a civil forfeiture case against the $1,724,802.75, and that the government will ask the Court to treat the $1,724,802.75 as the actual traceable proceeds of the 18 U.S.C. § 1960 violations set forth in this Agreement and Statement of Facts. The Company agrees that it will not file a claim in, or otherwise oppose, that civil forfeiture case or assist any others with filing a claim in that case. The Company acknowledges that no tax deduction may be sought in connection with the payment of any part of this amount. The Company shall not seek or accept directly or indirectly reimbursement or indemnification from any source with regard to the forfeited amount that the Company pays pursuant to this Agreement or any other agreement entered into with an enforcement authority or regulator concerning the facts set forth in Attachment A. Aside from the assistance related to victim petitions as described in paragraph 6(e) above, the Company agrees it

Jamie A. Schafer and David B. Massey
Re: Oregon Tool, Inc. Non-Prosecution Agreement
Page 5
September 20, 2023

will play no role with regard to the distribution of any portion of the $1,724,802.75 to victims, and that all such distributions will be at the sole discretion of the government.

10.     The USAO agrees, except as provided herein, that it will not bring any criminal or civil case against the Company relating to any of the conduct described in the Statement of Facts, attached hereto as Attachment A. The USAO, however, may use any information related to the conduct described in the attached Statement of Facts against the Company: (a) in a prosecution for perjury or obstruction of justice; (b) in a prosecution for making a false statement; (c) in a prosecution or other proceeding relating to any crime of violence; or (d) in a prosecution or other proceeding relating to a violation of any provision of Title 26 of the United States Code. This Agreement does not provide any protection against prosecution for any future conduct by the Company. In addition, this Agreement does not provide any protection against prosecution of any individuals, regardless of their affiliation with the Company.

11.     If, during the Term of the Agreement, the Company (a) commits any felony under U.S. federal law; (b) provides in connection with this Agreement deliberately false, incomplete, or misleading information, including in connection with its disclosure of information about individual culpability; (c) fails to cooperate as set forth in this Agreement; (d) fails to implement a compliance program as set forth in this Agreement and Attachment B; (e) otherwise fails specifically to perform or to fulfill completely each of the Company's obligations under the Agreement, regardless of whether the USAO becomes aware of such a breach after the Term of the Agreement is complete, the Company shall thereafter be subject to prosecution for any federal criminal violation of which the USAO has knowledge, including, but not limited to, the conduct described in the attached Statement of Facts, which may be pursued by the USAO in the U.S. District Court for the District of Oregon or any other appropriate venue. Determination of whether the Company has breached the Agreement and whether to pursue prosecution of the Company shall be in the USAO's sole discretion. Any such prosecution may be premised on information provided by the Company or its personnel. Any such prosecution relating to the conduct described in the attached Statement of Facts or relating to conduct known to the USAO prior to the date on which this Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the Company, notwithstanding the expiration of the statute of limitations, between the signing of this Agreement and the expiration of the Term plus one year. Thus, by signing this Agreement, the Company agrees that the statute of limitations with respect to any such prosecution that is not time-barred on the date of the signing of this Agreement shall be tolled for the Term plus one year. In addition, the Company agrees that the statute of limitations as to any violation of federal law that occurs during the Term will be tolled from the date upon which the violation occurs until the earlier of the date upon which the USAO is made aware of the violation or the duration of the Term plus five years, and that this period shall be excluded from any calculation of time for purposes of the application of the statute of limitations.

12.     In the event the USAO determines that the Company has breached this Agreement, the USAO agrees to provide the Company with written notice prior to instituting any prosecution

Jamie A. Schafer and David B. Massey
Re: Oregon Tool, Inc. Non-Prosecution Agreement
Page 6
September 20, 2023

resulting from such breach. Within thirty days of receipt of such notice, the Company shall have the opportunity to respond to the USAO in writing to explain the nature and circumstances of the breach, as well as the actions the Company has taken to address and remediate the situation, which the USAO shall consider in determining whether to pursue prosecution of the Company.

13. In the event that the USAO determines that the Company has breached this Agreement: (a) all statements made by or on behalf of the Company to the USAO or to the Court, including the attached Statement of Facts, and any testimony given by the Company before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the USAO against the Company; and (b) the Company shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that any such statements or testimony made by or on behalf of the Company prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible. The decision whether conduct or statements of any current director, officer or employee, or any person acting on behalf of, or at the direction of, the Company, will be imputed to the Company for the purpose of determining whether the Company has violated any provision of this Agreement shall be in the sole discretion of the USAO.

14. Except as may otherwise be agreed by the parties in connection with a particular transaction, the Company agrees that in the event that, during the Term of the Agreement, it undertakes any change in corporate form, including if it sells, merges, or transfers a substantial portion of its business operations as they exist as of the date of this Agreement, whether such sale is structured as a sale, asset sale, merger, transfer, or other change in corporate form, it shall include in any contract for sale, merger, transfer, or other change in corporate form a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement. The Company shall provide notice to the USAO at least thirty days prior to undertaking any such sale, merger, transfer, or other change in corporate form, including dissolution, in order to give the USAO an opportunity to determine if such change in corporate form would impact the terms or obligations of the Agreement.

15. This Agreement is binding on the Company and the USAO but specifically does not bind any other component of the Department of Justice, other federal agencies, or any state, local or foreign law enforcement or regulatory agencies, or any other authorities, although the USAO will bring the cooperation of the Company and its compliance with its other obligations under this Agreement to the attention of such agencies and authorities if requested to do so by the Company. This Agreement does not provide any protection against prosecution for any future conduct by the Company or any of its present or former parents or subsidiaries. In addition, this Agreement does not provide any protection against prosecution of any individuals, regardless of their affiliation with the Company or any of its present or former parents or subsidiaries.

Jamie A. Schafer and David B. Massey
Re: Oregon Tool, Inc. Non-Prosecution Agreement
Page 7
September 20, 2023

16. It is further understood that the Company and the USAO may disclose this Agreement to the public.

17. This Agreement sets forth all the terms of the agreement between the Company and the USAO. No amendments, modifications or additions to this Agreement shall be valid unless they are in writing and signed by the USAO, the attorneys for the Company, and a duly authorized representative of the Company.

Sincerely,

NATALIE K. WIGHT
United States Attorney

*/s/ William M. Narus*
WILLIAM M. NARUS
QUINN P. HARRINGTON
Assistant United States Attorneys

AGREED AND CONSENTED TO:

Oregon Tool, Inc.
Date: 9/27/23

BY: _____
ELLIOT ZIMMER
Chief Executive Officer
Oregon Tool, Inc.

Date: 9/27/23

BY: _____
JAMIE A. SCHAFER
DAVID B. MASSEY
Perkins Coie LLP